UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOSEPH TAYLOR, JR.                          CIVIL ACTION NO. 11-cv-198

VERSUS                                      JUDGE DOHERTY

COMMISSIONER OF THE SOCIAL                  MAGISTRATE JUDGE HANNA
SECURITY ADMINISTRATION


## REPORT AND RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be AFFIRMED.

### BACKGROUND

The claimant, Joseph Taylor, Jr. was born on February 9, 1963. [Rec. Doc. 5-3[1], p. 12] He has a high school education and one year of college; he can read/write and do basic math. [Tr. 13] He has worked as a journeyman carpenter in industrial, commerical and residential settings. He has been a supervisor of construction work in plants supervising 8-20 people, his longest employment. [Tr. 14, 194, 201] He has worked as a commercial sales specialist for a large home improvement store and as an installation technician for an appliance company. [Tr. 15, 194, 201] He was a self-employed carpenter(residential and commercial), and at one time he had 46 employees. [Tr. 15-16] He has worked with general

---

[1]The transcript of the administrative hearing(s) is made a part of the record at Rec. Doc. 5-3. Pages are numbered at the bottom right corner, and transcript/record references will be made in this document as Tr. ___.

contractors as a subcontractor, and he has done cost-estimating of jobs. [Tr. 16] He has had training in reading blueprints.

On January 25, 2008, at the age of 45, Taylor applied for disability insurance benefits, alleging a disability onset date of August 29, 2007[2].  He alleged his ability to work is limited by problems with his left knee, leg and a bulging disc in his back. [Tr. 150-52, 193]   The agency denied Taylor's application, and, at the claimant's request a *de novo* hearing was conducted by Administrative Law Judge Lawrence T. Ragona on August 9, 2009. [Tr. 10-36] Taylor was represented by counsel.   On September 15, 2009, ALJ Ragona issued his decision, denying benefits. [Tr. 58-64] On Taylor's request for review of the decision, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. [Tr. 230, 66-67] Another hearing was held on August 31, 2010. [Tr. 39-53].  The claimant was represented by counsel.   On September 21, 2010, the ALJ issued a second decision denying benefits. [Tr. 71-78] The claimant again sought review by the Appeals Council, which request was denied. [Tr. 1-4]  This suit followed.

## ASSIGNMENT OF ERRORS

Joseph Taylor  argues that the ALJ erred in failing to find him disabled and entitled to benefits.  Alternatively, Taylor argues that the ALJ erred in failing to find that he was

---

[2]The record indicates that Taylor applied for disability insurance benefits in 2004, which application was denied. [Tr. 189]

disabled for a time and entitled to a closed period of disability benefits.  Finally, Taylor argues that the ALJ erred in finding his testimony and complaints of pain were not credible.

## APPLICABLE LEGAL STANDARDS AND SCOPE OF REVIEW

Any individual, after any final decision of the Commissioner of Social Security in which he was a party may obtain a review of the decision by a civil action. 42 U.S.C. 405(g). This court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.  *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).  The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible, and any findings of fact by the Commissioner that are supported by substantial evidence are conclusive and must be affirmed.  *Perez v. Barnhart*, 415 F.3d 457, 461(5th Cir. 2005); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

 'Substantial evidence' is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.  *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel,* 239 F.3d at 704.  Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.  *Singletary v. Bowen*, 798

F.2d at 823. In applying this standard, the court may not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. *Dellolio v. Heckler*, 705 F.2d 123, 125(5th Cir. 1983). To determine whether the decision to deny social security benefits is supported by substantial evidence, the court weighs the following factors: (1) objective medical facts; (2) diagnoses and opinions from treating and examining physicians; (3) plaintiff's subjective evidence of pain and disability, and any corroboration by family and neighbors; and (4) plaintiff's age, educational background, and work history. 42 U.S.C.A. §405; *Martinez v. Chater*, 64 F.3d 172, 174(5th Cir. 1995). Any conflicts in the evidence regarding the claimant's alleged disability are to be resolved by the administrative law judge, not the reviewing court. *Newton v. Apfel*, 209 F.3d 448, 452(5th Cir. 2000). To make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-344(5th Cir. 1988); citing *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983).

*Disability* is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). *Substantial gainful activity* is defined as work activity involving significant physical or mental abilities for pay or profit. 20 C.F.R. §404.1572(a)-(b).

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing  past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

If the Commissioner determines that the claimant is disabled at any step, the analysis ends. 20 C.F.R. § 404.1520(a)(4). If the Commissioner cannot make a determination at any step, she/he goes on to the next step.  20 C.F.R. § 404.1520(a)(4). When assessing a claim for disability benefits in the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S.Ct. 885, 107 L.Ed.2d 967(1990). If the claimant is not actually working and his impairments match or are equivalent to one

-5-

of the listed impairments, the Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. §423(d)(2)(B).   The medical findings of the combined impairments are compared to the listed impairment most similar to the claimant's most severe impairment. *See Zebley*, 493 U.S. at 531, 110 S.Ct. 885.  It is the claimant's burden to prove at step three that his impairment or combination of impairments matches or is equivalent to a listed impairment. *Id.* at 530-31.  For a claimant to demonstrate that his disorder matches an Appendix 1 listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of the specified criteria, no matter how severe, does not qualify. *Id.*   Ultimately, the question of equivalence is an issue  reserved for the Commissioner.  *Spellman v. Shalala*, 1 F.3d 357, 364(5th Cir. 1993).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). The assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record. 20 CFR § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work. 20 CFR § 404.1520(e).   When a claimant's residual functional capacity is not sufficient to permit him to continue his former work, then his age, education, and work experience must be considered in evaluating whether he is capable of

performing any other work. *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001); 20 C.F.R. § 404.1520. The testimony of a vocational expert is valuable in this regard, as such expert "is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170(5th Cir. 1986); *see also Vaughan v. Shalala*, 58 F.3d 129, 132(5th Cir. 1995).

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS AND DISCUSSION

### *The Administrative Record:*

The claimant's employment record as described above appears in the record in several places, including the testimony of Joseph Taylor. Medical records submitted for consideration by the ALJ cover medical treatment and evaluation of Taylor from June, 2001, after he was involved in a motor vehicle accident. Taylor was treated with injections and physical therapy for complaints of neck and left shoulder pain. As of July 27,2001, he was

released to return to full duty at his work. [Tr. 304-308] In late 2002, Taylor began medical treatment for injuries sustained in a work-related accident, with complaints of right shoulder pain and low back pain. [Tr. 324-334] He applied for long-term disability benefits as a result of that injury. [Tr. 325] Records from March, 2004 include diagnoses of sprain injury to the neck and low back and carpal tunnel problems. [Tr. 300-304] By October, 2005, Taylor reported improvement with his neck problems and sought a return to offshore work. [Tr. 298]

The first references in medical records to left knee problems appear in August 29, 2007 progress notes by Dr. Elemer Raffai, who noted the claimant's complaints of knee tenderness, X-ray indications of good alignment without fractures, slight arthritis of the knee, plates/screws from femur fracture in the past, and a diagnosis of left knee tendonitis and bursitis. The claimant was treated and told to return in one month. [Tr. 296] An MRI was ordered in October, 2007, which showed no evidence of internal derangement, a small cyst, and small knee joint effusion. [Tr. 294, 312] Conservative treatment continued through the remainder of 2007, at which point Dr. Raffai was opining that there must be torn cartilage or scar tissue which MRI imaging was missing. On December 5, 2007, Dr. Raffai completed an Attending Physician's Statement, wherein he opined that Taylor had moderate limitation of functional capacity, capable of clerical/administrative(sedentary) activity. The report indicated that Taylor could perform activities of finger dexterity, reaching below and reaching above the shoulders for 8 hours per day. Dr. Raffai also opined that Taylor had

marked limitations associated with psychiatric impairment, though that is the only such reference in the record, and no explanation appears in the report. [Tr. 274]

A scope of the knee was scheduled for January, 2008. [Tr. 288-292, 309]  Dr. Raffai performed the surgery as an outpatient procedure on January 7, 2008.  His pre-operative records include history and physical examination notes indicating normal range of motion in Taylor's neck, full range of motion in extremities, no evidence of arthritic deformities and no sensory deficits. [Tr. 320-321] By January 14, 2008, Dr. Raffai was noting good alignment and minimal arthritis.  He instructed Taylor to return in six weeks. [Tr. 286]

Three months after the surgery, on April 5, 2008, Dr. Maxcie Sikora performed a consultative examination of Taylor. [Tr. 349-352]  At that time, the claimant was having difficulty in ambulation, with increased warmth and swelling in his left knee and increased warmth in the right knee.  Grip was 5/5 bilaterally without bony deformity or atrophy.  The claimant exhibited significant limitations with range of motion.  As a result of his single examination of Taylor, Dr. Sikora assessed his functional capacity at that time at the sedentary level.

On April 22, 2008, Dr. Charles Lee performed a Physical Residual Functional Capacity Assessment for the Disability Determination Services, opining regarding the claimant's expected abilities and activity levels after one year recovery from surgery. [Tr. 353-360] The assessment included exertional limitations for occasional lifting/carrying to 20 pounds, frequent lifting/carrying to 10 pounds; standing/walking and sitting, with normal

breaks, 6 hours in an 8-hour workday.  The limitations were explained with medical record references.  Dr. Lee opined that Taylor could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  He was restricted from using ladders/ropes or scaffolds.  There were no manipulative, visual, communicative or environmental limitations established.

Dr. Raffai did not see Taylor again until March 11, 2009, according to the administrative record. At that time Taylor complained of thoracic and lumbar spine pain, tenderness and stiffness. [Tr. 363] A followup visit with similar complaints occurred May 12, 2009.  On July 21, 2009, Taylor returned to Dr. Raffai with complaints of knee pain, helped by physical therapy. [Tr. 365] The next reference to treatment by Dr. Raffai came nearly one year later, as an order for an MRI of the left knee, which showed degeneration, possible meniscus body superior articular surface tear, and subcutaneous edema. [Tr. 372] On July 29, 2010, Dr. Raffai generated a Medical Source Statement of Ability to Do Work-Related Activities. [Tr. 367-371] In that statement, Dr. Raffai limited the claimant's lifting/carrying to less than 10 pounds; his standing/walking was limited to less than 2 hours in an 8-hour workday.  His sitting was limited to less than 6 hours in an 8-hour workday.  The doctor limited Taylor's pushing/pulling in both upper and lower extremities.  He established postural limitations against any climbing, balancing, kneeling, crouching, crawling or stooping.  He imposed, without explanation, manipulative limitations as to reaching, handling, fingering, or feeling, indicating that those things could only be done occasionally.

-10-

Finally, Dr. Raffai opined without explanation that Taylor's impairments limited him regarding temperature, noise, dust, vibration, humidity, moisture, heights, and fumes.

The record also contains a letter from the claimant's daughter Portia Taylor, submitted to the ALJ on August 24, 2010. [Tr. 236]

***The Administrative Hearing:***

At the administrative hearing on August 31, 2010, all medical records and other documents were received into evidence without objection. At that time, Taylor's attorney presented additional documents which were included in the record. [Tr. 11]  Live testimony was given by Taylor and the vocational expert witness William Stampley.  There was no objection to Mr. Stampley's credentials or expertise.

*Joseph Taylor, Jr.* testified at the hearing.  He provided basic information regarding his address and date of birth, his height/weight, and the composition of his household. [Tr. 12] He described his educational background to have included high school graduation, one year of college and completion of carpenter journeyman school. [Tr. 13-14] He further described his employment history to have included work as a journeyman carpenter in industrial, commercial and residential settings in the construction business.  He served as a supervisor in heavy construction plant environments, supervising and directing the work of 10-20 employees. [Tr. 14] He has worked as a commercial sales specialist for Lowe's Home Center, assisting customers regarding supplies/equipment needs and selection. [Tr. 15]  He has been an installation technician for Conn's Appliances, installing different types of

appliances. [Tr. 15] He has worked as a self-employed carpenter in residential and commercial settings, employing up to 46 people. [Tr. 15-16] He has done cost estimating for construction jobs, and he has dealt with contractors as a subcontractor. [Tr. 16]

In 2009, Taylor worked a total of six months doing insulation/weatherization work. He worked on his feet, with tools, and he had a helper to do climbing tasks.  He sought no accommodation from his employer  and did not disclose any pain-related difficulties to the employer [Tr. 18-19, 26]  From April, 2010 to August 4, 2010, Taylor worked in the warehouse for Stine's Lumber, loading material onto trucks and selling products with the assistance of helpers. [Tr. 19, 27, 29] In both jobs, Taylor worked 32-40 hours a week, earning $14 per hour. [Tr. 21]

Taylor testified that he currently has arthritis on his left side, and he has neck aches and backaches, pain in both knees and ankles.  He has bulging discs in his back, for which his doctor has told him to stay active and watch his weight. [Tr. 24-25] He does not/has not worn back or knee braces. [Tr. 25, 29] He can stand for about 30 minutes before needing to sit, and he can walk about half a block before needing to stop and start again. [Tr. 16-17] He can sit for 30 minutes before walking around. [Tr. 20] He can comfortably lift 5-8 pounds. [Tr. 23]He drives his standard-shift truck daily, taking his daughters to/from  school.  He does some housework,  cooks meals for his family, and he does small repair work around the house.  [Tr. 21-23] He volunteers at his church calling bingo games, where he can sit/stand to keep comfortable. [Tr. 25, 30]  Taylor testified that his primary physician is Dr. Elemer

-12-

Raffai, who he currently sees every other month. [Tr. 17] He takes medications prescribed by Dr. Raffai, which give him stomach aches and make him sleepy. [Tr. 25-26]

*William Stampley, Jr.* was called, without objection, to testify as a vocational expert. He was present during the testimony of Taylor, and he had reviewed the record concerning Taylor's past work. [Tr. 31-32] Stampley responded to questions about the skill and exertional levels of Taylor's past employment.  He described carpentry work as medium, semi-skilled work; construction work was described as heavy, semi-skilled work.  Supervisor work as described by Taylor is considered medium, skilled work.  Appliance installer work is considered heavy, skilled work, and general hardware sales work is considered light, semi-skilled work. [Tr. 32] The claimant's prior work as a drywall installer, stock clerk and material handler were considered heavy, skilled and  semi-skilled positions. [Tr. 32] Stampley responded to hypothetical questions from the ALJ, factoring the claimant's age, education and work experience and assuming that Taylor could lift/carry 20 pounds occasionally and 10 pounds frequently, and he could stand/walk/sit for about six hours, one hour continuously. With those assumptions, the expert opined that the position of general hardware salesperson, considered light work, would be a suitable possibility for Taylor, with positions available in the state and national economies. [Tr. 33] Other possibilities would be positions as assembler of small products and fast foods worker.  As light duty positions, they would allow for sitting after standing for an hour. [Tr. 33] Stampley also testified that if Taylor were limited to sedentary type work, if he could only lift/carry 10 pounds

-13-

occasionally, five pounds frequently, and if he could stand/walk for 2 hours in an eight-hour day, one hour continuously and could sit for six hours, one hour continuously, then he could perform the jobs of lumber estimator(sedentary, skilled), taxicab starter(sedentary, semi-skilled) or telephone solicitor(sedentary, semi-skilled), with significant positions available in the state and national economies. [Tr. 34] The lumber estimator position would especially suit Taylor, based on his past work in the hardware and construction businesses, according to the expert. [Tr. 34]  Finally, Stampley was asked if Taylor could perform those jobs or any other jobs if he could not maintain an eight-hour day, could only stand/walk for less than two hours and could only sit for less than six hours total in a day, and if he also had significant problems with manual manipulations.  Stampley responded that he could not. [Tr. 35] The expert was not cross-examined by the claimant's counsel.

At the close of the hearing, the ALJ declared his intention to review the entire record prior to issuing his decision, including the evidence submitted on the hearing date. [Tr. 35]

**The Determination of the ALJ:**

The record  demonstrates that the ALJ followed the requisite five step sequence in analyzing the claims of Joseph Taylor.  In this case, the Commissioner found, at step one, that Joseph Taylor has not engaged in substantial gainful activity since his alleged disability onset date of August 29, 2007, noting that the claimant worked after the alleged onset date, but the work activities were unsuccessful attempts. [Tr. 73] That finding is supported by evidence in the record.

-14-

At step two, the ALJ found that Taylor has the following severe impairments: disorder of the knee and disorder of the lumbar spine. [Tr. 73]  This is also supported by evidence in the record.  Although the claimant testified to a problem with fine manipulation because of swelling in his hands, there was no reference to that condition during the consultive examination, and Taylor's handgrip was noted to be 5/5 bilaterally, without bony deformity or muscle atrophy.  Absent any indication that Taylor sought treatment for such condition, the ALJ found that it is not a medically determinable impairment. [Tr. 73] The claimant has not challenged that finding.

At step three, the ALJ found that Taylor does not have an impairment or a combination of impairments that meets or medically equals a listed impairment, explaining that the issue was considered at the initial level of administrative review, with a determination made that the claimant's condition does not satisfy the requirements for any condition listed in Appendix 1. [Tr. 74]  Taylor has not challenged this finding.

The ALJ next found that Joseph Taylor retains the residual functional capacity(RFC) to lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday for one hour continuously; and sit for six hours in an eight-hour workday for one hour continuously.[3] [Tr. 74]  In making that finding, the ALJ considered all symptoms noted by the claimant and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence of the

---

[3]The RCF is consistent with the light work classification set out at 20 CFR §404.1567(b).

claimant's work history and other activities since the onset date.  He also considered opinion evidence from multiple physicians, including the claimant's treating physician.  The record includes assessments and opinions by Drs. Maxcie Sikora, Charles Lee, Gary Blanchard and Elemer Raffai, each of which was  addressed in the determination document, consistent with the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p and 10 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.  In considering the claimant's symptoms, the ALJ engaged in the appropriate two-step process to conclude that Taylor's medically determinable impairments could reasonably be expected to cause the alleged sumptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC. [Tr. 74]  These findings are the subject of challenge by the claimant, as will be discussed below.

The ALJ then proceeded to step four, where he found that Taylor is unable to perform any of his past relevant work. In making that finding, the ALJ noted the various positions held by the claimant in the past, most of which jobs were considered to be more than light exertional work.  He also noted the testimony of the vocational expert that Taylor could perform some past work given the stated residual functional capacity.  However, "in giving the claimant the benefit of any doubt," the ALJ made the finding noted, and he proceeded to step five. [Tr. 77]

At step five, the ALJ properly considered Joseph Taylor's age, education, documented skills and abilities and the claimant's residual functional capacity to determine that there are

-16-

jobs existing in significant numbers in the national economy that the claimant can perform. [Tr. 78]  In making that finding, the ALJ acknowledged that Taylor's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations.  Thus, "to determine the extent to which these limitations erode the unskilled light occupational base," the ALJ called upon the vocational expert at the hearing to testify regarding the existence of jobs in the national economy for an individual like Taylor. [Tr. 78] In responding to hypothetical questions, the expert offered three representative occupations which Taylor could perform, including the sedentary position of lumber estimator.  As to each, the expert provided the numbers of available jobs in the national and state economies. Based on the expert's testimony, the ALJ concluded that Taylor is capable of making a successful adjustment to other work,  making a finding of 'not disabled' appropriate. [Tr. 78] It should be noted that the claimant did nothing to rebut the testimony of the VE, declining to cross-examine the witness at the hearing.

The claimant argues that when presented the hypothetical question calling for the assumption that Taylor had pain and limitations at a level where he could not maintain an eight hour day, could only stand/walk for less than two hours,  could only sit for less than six hours in a workday, and had significant problems with manual manipulation, the VE opined that the claimant could not be employed.  While those questions were asked of the expert, eliciting the referenced response, they were not the only scenarios posed to the expert, who responded to three different hypothetical queries from the ALJ.  The Fifth Circuit has held

-17-

that an ALJ need only incorporate into the hypothetical questions posed to a vocational expert those claimed disabilities that are supported by the evidence and recognized by the ALJ.  Thus, it is of no significance that the ALJ rejected the VE's testimony regarding the claimant's alleged inability to attend work regularly in reaching his decision.  *Masterson v. Barnhart*, 309 F.3d 267, 273(5th Cir. 2002); *Bowling v. Shalala*, 36 F.3d 431, 436(5th Cir. 1994).  Although the VE was asked to respond to three hypothetical questions and he did so respond, only the question which posed the hypothetical containing the elements of the ALJ-determined RFC needed to be asked.  In the instant case, the record demonstrates that the ALJ rejected the opinions/assessments which formed the basis for the claimant-preferred hypothetical.

Since the claimant has asserted that his alleged disabilities are constant and longstanding, and he has not alleged that his symptoms are episodic or intermittent, the court finds that no separate declaration by the ALJ that Taylor could maintain employment was necessary.  As is the usual case, the issue of whether the claimant can maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment.[4]  Absent some showing that Taylor's conditions waxed and waned intermittently, there is no requirement that the ALJ separately address his ability to maintain employment.  *Frank v. Barnhart*, 326 F.3d 618,619-620(5th Cir. 2003).

---

[4]By definition, the RFC is a measure of plaintiff's capacity to do physical and mental work activities on a regular and substantial basis. 20 CFR §404.1545, SSR 96-8p.

-18-

Joseph Taylor argues generally that the ALJ erred by not finding him disabled and entitled to benefits.  Specifically he urges that  there is "no credible medical evidence of record to refute Dr. Raffai's opinion of total disability," [Rec. Doc. 10, p. 5] and, "if the ALJ would have considered his testimony in its true light, would have considered it credible, and considered the testimony in conjunction with the medical evidence of record, he would have prevailed in this matter." [Rec. Doc. 10, p. 8]  He makes the alternative argument that he should have been found to be disabled for a time, at least, entitling him to a closed period of disability benefits, though no specific time period is referenced.

## 1.    THE   COMMISSIONER PROPERLY CONSIDERED AND WEIGHED DR. RAFFAI'S OPINIONS.

Taylor argues that the Commissioner failed to properly consider and weigh the medical opinions of his treating physician Dr. Elemer Raffai.  At the request of the claimant, Dr. Raffai issued a Medical Source Statement of Ability to Do Work-Related Physical Activities on July 29, 2010. [Tr. 367-371] Dr. Raffai opined that Taylor can occasionally lift and carry less than 10 pounds, frequently lift/carry less than 10 pounds, stand/walk less than 2 hours in an eight-hour workday, and sit less than 6 hours in a workday. [Tr. 369] The doctor's explanation for the restrictions is noted only as "arthritis neck, L-spine & both knees." [Tr. 369] As of the report date, Dr. Raffai would restrict the claimant from any climbing, balancing, kneeling, crouching, crawling, or stooping.  He would limit the claimant's reaching, handling, fingering, and feeling, but he offered no explanation for those restrictions despite the call for explanation on the forms used. [Tr. 369-370] Also without

explanation are Dr. Raffai's limitations related to environmental factors(temperature, noise, dust, etc.). [Tr. 371]  Taylor has no communication limitations, according to the doctor.

The ALJ gave no weight to these opinions by Dr. Raffai, detailing his reasons in the determination document.  He cited to the sparse medical records from the date of Taylor's knee surgery in January, 2008 to the date of the report, including "only a handful" of visits with Dr. Raffai in 2009 and no treatment records from 2010. [Tr. 76]  Further, the ALJ noted that during much of 2009, Taylor worked at levels "probably more than light exertional work." [Tr. 76] The ALJ also focused on the claimant's period of full time employment as a warehouse worker at the time the report was generated,  indicating to the ALJ that the claimant is not as limited as Dr. Raffai found him to be. [Tr.76] The ALJ also noted that Dr. Raffai was "was apparently unaware the claimant was working." [Tr. 76]  Based on these findings, the ALJ rejected the opinions of Dr. Raffai as set out in the Medical Source Statement of July 29, 2010.  That rejection was based on substantial evidence cited in detail in the determination document.

It is worth noting that the ALJ also rejected the opinion of Dr. Maxcie Sikora regarding the limitation of the claimant. [Tr. 75, 352] Noting that Dr. Sikora's consultative assessment came only three months after Taylor's knee surgery and that medical records did not support the doctor's opinions regarding the claimant's back complaints at that point in time, the ALJ found that the doctor's opinions were not supported by the medical records cited in the determination.

-20-

Another physical residual functional capacity assessment was done on April 22, 2008 by Dr. Charles Lee, who projected that Taylor could perform light exertional work after a year recovery from surgery. [Tr. 353-360]  That assessment for the Disability Determination Services was given weight by the ALJ insofar that it is consistent with the residual functional capacity finding in the determination. [Tr. 76].

The determination document makes clear and detailed references to medical records and the testimony of the claimant in the articulated reasons for accepting and/or rejecting these opinions and for support of the finding that Taylor could perform according to the residual functional capacity set out by the ALJ. An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Qualls v. Astrue*, 339 Fed. App'x 461, 466 (5th Cir. 2009), citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). It is true that the opinions of a claimant's treating physician are generally entitled to great weight. *Paul v. Shalala*, 29 F.3d 208, 210(5th Cir. 1994).  Reliance can be decreased and even rejected by the ALJ for good cause, however, and the ALJ may disregard statements by such physician which are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236(5th Cir. 1994).  When a treating or examining physician's opinions are inconsistent with other substantial evidence in the record, the opinions are not entitled to any specific weight in the ALJ's decision. *DeLeon v. Barnhart*, 174 Fed. App'x 201, 202 (5th Cir. 2006), citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th

-21-

Cir. 1994). When an ALJ's residual functional capacity assessment is based at least in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report, the legal standard set forth in the jurisprudence and in SSR 96-8p is satisfied.  *See Onishea v. Barnhart*, 116 Fed. App'x. 1, 2 (5th Cir. 2004). It is clear to the undersigned that the ALJ did consider Dr. Raffai's opinions as well as the opinions of other physicians and all of the medical evidence in the record at the time of the hearing, accepting some and rejecting some, when reaching his conclusion that Joseph Taylor retained the residual functional capacity to perform work at the levels described in the RFC. Accordingly, the undersigned finds that the ALJ did not err in his assignment of weight to the physicians' statements and that the Commissioner's residual functional capacity finding was reached by use of the proper legal analysis and is supported by substantial evidence.

## 2.     THE COMMISSIONER PROPERLY CONSIDERED AND EVALUATED THE CLAIMANT'S CREDIBILITY.

Joseph Taylor next argues that the Commissioner failed to properly evaluate his credibility.  "Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity." *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  In this case, the ALJ found that Taylor's medically determinable impairments could reasonably be expected to produce his alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of the symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its

functional effects." SSR 96-7p, *1. The regulations state: "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, *4. The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation."*Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).  In this case, the ALJ reviewed Taylor's testimony concerning his functional limitations, noting that he is able to drive a standard-shift truck daily, cook and do household chores on a daily basis, shop, and attend church functions.  Furthermore, the record reveals, and the ALJ noted the contradiction between Taylor's reported daily activities, especially during periods when he was performing full-time work at greater than light exertional levels, and his reported symptoms and limitations in the sparse medical records for that same time period.  The details support the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these  symptoms are not credible" to the extent they are inconsistent with the RFC. [Tr. 74] The undersigned finds that the ALJ's detailed narrative was sufficient.

An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence.  *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).  In this case, the ALJ was presented with medical evidence that Joseph Taylor

-23-

has painful knees and a painful back, but the nature and extent of the functional impairment resulting from those conditions, as revealed by the sparse medical record and Taylor's reported activity levels, was inconsistent with Taylor's own descriptions of his functional capacity.  Further, a claimant's activity level may be properly considered in evaluating the credibility of his subjective complaints.  *See Leggett v. Chater*, 67 F.3d 558, 565 n.12(5th Cir. 1995).  In this case, the ALJ found that the claimant's reported activities warranted the conclusion that he was not as incapacitated as he claimed.  Accordingly, the ALJ's finding regarding the claimant's credibility is supported by the evidence in the record.

The evaluation of credibility is a task particularly within the province of the ALJ. *Harrell v. Bowen*, 862 F.2d 471, 480(5th Cir. 1988).  Since he enjoys the benefit of perceiving first-hand the claimant at the hearing, the ALJ's credibility evaluation is not properly reweighed by this court, and it is entitled to considerable deference.  *Falco v. Shalala*, 27 F.3d 160, 163 n. 18(5th Cir. 1994); *Chambliss v. Massanari*, 269 F.3d 520, 522(5th Cir. 2001).

3.      **THE ALTERNATIVE ASSIGNMENTS OF ERROR BY THE CLAIMANT ARE NOT EXPLAINED OR ARGUED ELSEWHERE IN THE BRIEF.**

In the Statement of Errors, the claimant makes the statement:

> 2. Alternatively, the Administrative Law Judge erred in failing to find that claimant was disabled for a time and entitled to a closed period of disability benefits. [Rec. Doc. 10, p. 6]

The alleged error is not referenced elsewhere in the brief.  The claimant has not identified a 'closed period' for which he should have been granted disability benefits; he did not raise the question at the hearing or cite to any legal authority for his position.  Having failed to argue

-24-

or adequately identify the alleged error, the undersigned finds that the assignment of error has apparently been abandoned.

A similar situation is presented in the Introduction to Claimant's brief, where Joseph Taylor calls for a remand to the Secretary for consideration and evaluation of the alleged worsening and deterioration of his condition. [Rec. Doc. 10, p. 1] The argument does not appear elsewhere in the brief; no new evidence is offered in support of the assertion.

The Fifth Circuit has instructed that evidence is not material "insofar as it details the alleged worsening of a claimant's condition after the date of the hearing. This is not to say that we cannot consider any evidence post-dating a hearing, but that medical evidence must shed light on the severity of a claimant's medical condition before the hearing." *Hammond v. Barnhart*, 132 Fed. App'x 6, 7 (5th Cir. 2005). In fact, a claim may be remanded "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). No such showing has been made in the instant case, and the court declines to address further the cursory argument suggested in the claimant's brief.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned determines that the Commissioner's findings are supported by substantial evidence, and the proper standards were applied in the evaluation of the evidence. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 23rd day of July 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE